**STATE v. PACKINGHAM**

[229 N.C. App. 293 (2013)]

STATE OF NORTH CAROLINA

v.

LESTER GERARD PACKINGHAM

No. COA12-1287

Filed 20 August 2013

**Sexual Offenders—statute prohibiting accessing commercial social networking website—First Amendment violation—overbroad—vague**

Defendant registered sex offender's conviction for accessing a commercial social networking website pursuant to N.C.G.S. § 14-202.5 was vacated. The statute violates federal and state constitutional rights to free speech, expression, association, assembly, and the press under the First and Fourteenth Amendments. Additionally, the statute is overbroad, vague, and is not narrowly tailored to achieve a legitimate government interest.

Appeal by defendant from judgment entered 30 May 2012 by Judge William Osmond Smith in Durham County Superior Court. Heard in the Court of Appeals 23 May 2013.

*Attorney General Roy Cooper, by Assistant Attorney General David L. Elliott, for the State.*

*Glenn Gerding, for defendant.*

ELMORE, Judge.

Lester Gerard Packingham (defendant), a registered sex offender, appeals from a judgment entered upon a jury conviction for accessing a commercial social networking Web site, pursuant to N.C. Gen. Stat. § 14-202.5 (2011). Defendant challenges the statute as unconstitutional. For the reasons stated herein, we agree. Accordingly, we vacate the judgment of the trial court.

## I. Background

Chapter 14, Article 27A of our general statutes governs the Sex Offender and Public Protection Registration Programs (the Registry). "The General Assembly recognizes that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders

is of paramount governmental interest." N.C. Gen. Stat § 14-208.5 (2011). Accordingly, the stated purpose of the Registry is to protect the public and children from the risk of recidivism by sex offenders and to aid "law enforcement officers' efforts to protect communities, conduct investigations, and quickly apprehend offenders" because sex offenders "pose significant and unacceptable threats to the public safety and welfare of children." *Id.*

As part of the Registry, persons convicted on or after 1 January 1996 of sexually violent offenses or certain offenses against minors must register as a sex offender. In doing so, they must provide the sheriff's office in the county in which they reside with all pertinent personal information set forth in N.C. Gen. Stat. § 14-208.7(b) (2011). "Registration shall be maintained for a period of at least 30 years following the date of initial county registration unless the person, after 10 years of registration, successfully petitions the superior court to shorten his or her registration time period under G.S. 14.208.12A." N.C. Gen. Stat. § 14-208.7(a)(2) (2011). Alternatively, "[a]ny person who is a recidivist, who commits an aggravated offense, or who is determined to be a sexually violent predator" is required to register under the Sexually Violent Predator Registration Program. N.C. Gen. Stat. § 14-208.6A (2011). A violation of the registration requirements is a Class F felony. N.C. Gen. Stat. § 14-208.11 (2011).

On 1 December 2008, the General Assembly enacted N.C. Gen. Stat. § 14-202.5 as part of the Protect Children from Sexual Predators Act. NC B. Summ., 2008 Reg. Sess. S.B. 132. The statute bans the use of commercial social networking Web sites by any registered sex offender:

> (a) Offense. -- It is unlawful for a sex offender who is registered in accordance with Article 27A of Chapter 14 of the General Statutes to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages on the commercial social networking Web site.
>
> (b) For the purposes of this section, a "commercial social networking Web site" is an Internet Web site that meets all of the following requirements:
>
> (1) Is operated by a person who derives revenue from membership fees, advertising, or other sources related to the operation of the Web site.

(2) Facilitates the social introduction between two or more persons for the purposes of friendship, meeting other persons, or information exchanges.

(3) Allows users to create Web pages or personal profiles that contain information such as the name or nickname of the user, photographs placed on the personal Web page by the user, other personal information about the user, and links to other personal Web pages on the commercial social networking Web site of friends or associates of the user that may be accessed by other users or visitors to the Web site.

(4) Provides users or visitors to the commercial social networking Web site mechanisms to communicate with other users, such as a message board, chat room, electronic mail, or instant messenger.

(c) A commercial social networking Web site does not include an Internet Web site that either:

(1) Provides only one of the following discrete services: photo-sharing, electronic mail, instant messenger, or chat room or message board platform; or

(2) Has as its primary purpose the facilitation of commercial transactions involving goods or services between its members or visitors.

(d) Jurisdiction. -- The offense is committed in the State for purposes of determining jurisdiction, if the transmission that constitutes the offense either originates in the State or is received in the State.

(e) Punishment. -- A violation of this section is a Class I felony.

N.C. Gen. Stat. § 14-202.5 (2011).

In the case *sub judice*, defendant was convicted of taking indecent liberties with a child in 2002. Accordingly, he became a registered sex offender. In 2010, in an effort to enforce N.C. Gen. Stat. § 14-202.5, the Durham Police Department began investigating profiles on the Web sites Myspace.com and Facebook.com for evidence of use by registered sex offenders. An officer recognized defendant in a profile picture belonging to Facebook user "J.R. Gerard," then confirmed that defendant was the

person who created the profile page. Thereafter, defendant was indicted on 20 September 2012 for maintaining at least one personal Web page or profile on Facebook.com in violation of N.C. Gen. Stat. § 14-202.5.

At a pretrial hearing, defendant moved to dismiss the charge on the basis that N.C. Gen. Stat. § 14-202.5 was unconstitutional. The trial court joined defendant's motion with a similar motion made by another defendant. Superior Court Judge Michael R. Morgan denied the joint motion, finding that the statute was constitutional as applied to both defendants. He declined to rule on the statute's facial constitutionality for want of jurisdiction. Defendant in the case *sub judice*, and the other defendant, filed a joint appeal with this Court, which we denied on 22 June 2011.

On 30 May 2012, a jury found defendant guilty of accessing a commercial social networking Web site. Defendant was sentenced to 6 to 8 months imprisonment, suspended, and placed on 12 months of supervised probation. Defendant now appeals.

## II. Analysis

On appeal, defendant challenges N.C. Gen. Stat. § 14-202.5 (2011) on the basis that it violates his federal and state constitutional rights to free speech, expression, association, assembly, and the press under the First and Fourteenth Amendments. Additionally, he asserts that the statute is overbroad, vague, and not narrowly tailored to achieve a legitimate government interest. We agree.

This case presents the single legal question of whether N.C. Gen. Stat. § 14-202.5 is unconstitutional. "The standard of review for questions concerning constitutional rights is *de novo*. Furthermore, when considering the constitutionality of a statute or act there is a presumption in favor of constitutionality, and all doubts must be resolved in favor of the act." *State v. Daniels*, ___ N.C. App. ___, ___, 741 S.E.2d 354, 363 (2012), *appeal dismissed, review denied*, 738 S.E.2d 389 (N.C. 2013) (internal quotations and citations omitted).

## A. Level of Scrutiny

The statute plainly involves defendant's First Amendment rights as incorporated through the Fourteenth Amendment because it bans the freedom of speech and association via social media. "[A] statute regulating the time, place and manner of expressive activity is content-neutral in that it does not forbid communication of a specific idea." *State v. Petersilie*, 334 N.C. 169, 183, 432 S.E.2d 832, 840 (1993) (quotation marks and citations omitted). N.C. Gen. Stat. § 14-202.5 (2011) is content neutral because it restricts access to commercial social networking

Web sites without any reference to the content or type of speech disseminated or posted thereon. *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 641-42, 129 L. Ed. 2d 497 (1994). Content-neutral regulations are subject to intermediate scrutiny: they must be both "narrowly tailored to achieve a significant governmental interest" and "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 105 L. Ed. 2d 661, 675 (1989). In the instant case, we conclude that the statute is not narrowly tailored; accordingly, we decline to address whether the statute leaves open alternative channels for communication. *See Doe v. Prosecutor*, 705 F.3d 694, 698 (7th Cir. 2013).

## B.  Narrow Tailoring

The U.S. Supreme Court has stated that a narrowly tailored statute "targets and eliminates no more than the exact source of the evil it seeks to remedy. A complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485, 101 L. Ed. 2d 420, 485 (1988) (citation omitted).

> [T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation . . . . So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.

*Ward*, 491 U.S. at 799-800, 105 L. Ed. 2d at 680-81 (quotation marks and citations omitted). The State must also "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys.*, 512 U.S. at 664, 129 L. Ed. 2d at 532.

At the outset, we note that this is the first constitutional challenge to N.C. Gen. Stat. § 14-202.5 heard before this Court. As such, we find several federal court decisions addressing the constitutionality of similar statutes to be persuasive. Most recently, in *Doe v. Prosecutor*, 705 F.3d 694 (7th Cir. 2013), the Seventh Circuit declared Indiana Code § 35-42-4-12 (2011) to be unconstitutional: the statute prohibited registered sex offenders convicted of offenses involving a minor (including, *inter alia*, child molesting, possession of child pornography, and sexual conduct in

the presence of a minor) from using social networking websites, instant messaging services, and chat programs. It defined a "social networking web site" as a Web site that:

> (1)  facilitates the social introduction between two (2) or more persons;
>
> (2)  requires a person to register or create an account, a username, or a password to become a member of the web site and to communicate with other members;
>
> (3)  allows a member to create a web page or a personal profile; and
>
> (4)  provides a member with the opportunity to communicate with another person.
>
> The term does not include an electronic mail program or message board program.

Ind. Code Ann. § 35-42-4-12 (2011). Additionally, the statute provided a defense to a prosecution if the registered offender:

> (1)  did not know that the web site or program allowed a person who is less than eighteen (18) years of age to access or use the web site or program; and
>
> (2)  upon discovering that the web site or program allows a person who is less than eighteen (18) years of age to access or use the web site or program, immediately ceased further use or access of the web site or program.

*Id.* Calling the statute "overinclusive" and a complete "social media ban," the Seventh Circuit concluded that, though content neutral, the statute was not narrowly tailored to serve the state's interest because it broadly prohibited substantial protected speech rather than specifically targeting the evil of improper communications to minors:

> [T]here is nothing dangerous about Doe's use of social media as long as he does not improperly communicate with minors. Further, there is no disagreement that illicit communication comprises a minuscule subset of the universe of social network activity. As such, the Indiana law targets substantially more activity than the evil it seeks to redress.

*Prosecutor,* 705 F.3d at 698-99.

Similarly, Nebraska statute Neb. Rev. Stat. § 28-322.05(1) (2012) made it unlawful for certain registered sex offenders "to knowingly and intentionally use[] a social networking web site, instant messaging, or chat room service that allows a person who is less than eighteen years of age to access or use [it]." Neb. Rev. Stat. § 28-322.05(1) (2012). Only those registered offenders convicted of offenses targeting minors were subject to the statutory ban. *See* Neb. Rev. Stat. § 29-4001.01(13) (2012). The statute defined a "social networking web site" as:

> [A] web page or collection of web sites contained on the Internet (a) that enables users or subscribers to create, display, and maintain a profile or Internet domain containing biographical data, personal information, photos, or other types of media, (b) that can be searched, viewed, or accessed by other users or visitors to the web site, with or without the creator's permission, consent, invitation, or authorization, and (c) that may permit some form of communication, such as direct comment on the profile page, instant messaging, or email, between the creator of the profile and users who have viewed or accessed the creator's profile[.]

Neb. Rev. Stat. § 29-4001.01(13) (2012).

Upon review, the U.S. District Court in Nebraska held that Neb. Rev. Stat. § 28-322.05 was not narrowly tailored because it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Doe v. Nebraska*, 898 F. Supp. 2d 1086, 1112 (D. Neb. 2012) (citation omitted) (alteration in original). The District Court reasoned that, even if the ban was applicable only to the most common and notable social networking sites, such as Facebook.com and Myspace.com, it nevertheless prohibited an enormous amount of expressive activity on the internet: "[T]he ban potentially restricts the targeted offenders from communicating with hundreds of millions and perhaps billions of adults and their companies despite the fact that the communication has nothing whatsoever to do with minors." *Id.* at 1111; *see also Doe v. Jindal*, 853 F. Supp. 2d 596, 607 (M.D. La. 2012) (holding that La. Rev. Stat. Ann. § 14:91.5 (2012) was unconstitutional, in part because "[t]he sweeping restrictions on the use of the internet for purposes completely unrelated to the activities sought to be banned by the Act impose severe and unwarranted restraints on constitutionally protected speech. More focused restrictions that are narrowly tailored to address the specific conduct sought to be proscribed should be pursued.").

## C. Legitimate State Interest

Turning now to the case at hand, it is undisputed that the State has a significant interest in protecting minors from predatory behavior by sex offenders on the internet. North Carolina requires sex offenders to register in the sex offender database because "the protection of [] children is of great governmental interest." N.C. Gen. Stat. § 14-208.5 (2011). However, while enacted to further a legitimate state interest, N.C. Gen. Stat. § 14-202.5, as it stands, is not narrowly tailored.

### i.  *Substantially Broad Application*

First, defendant argues that N.C. Gen. Stat. § 14-202.5 is not narrowly tailored, in part

> because it treats all registered sex offenders the same, regardless of the offense committed, the victim's age, whether a computer was used to facilitate or commit the offense, the likelihood of reoffending, and regardless of whether the person has been classified as a sexually violent predator. It burdens more people than needed to achieve the purported goal of the statute.

We agree. We begin by noting that Article 27A demonstrates the legislature's intent to distinguish between sex offenders based on the character of their convictions:

> It is the further objective of the General Assembly to establish a more stringent set of registration requirements for recidivists, persons who commit aggravated offenses, and for a subclass of highly dangerous sex offenders who are determined by a sentencing court with the assistance of a board of experts to be sexually violent predators.

N.C. Gen. Stat. § 14 208.6A (2011). Accordingly, our general statutes contain various restrictions that are only applicable to specified subsets of sex offenders. *See* N.C. Gen. Stat. § 14-208.18(c) (2011) (governing premises restrictions that apply only to registered sex offenders who commit an offense defined in Article 7A or against a child under the age of 16); N.C. Gen. Stat. § 14-208.22 (2011) (requiring only offenders classified as "sexually violent predators" to provide additional identifying factors, offense history, and documentation of psychiatric treatment); N.C. Gen. Stat. § 14-208.23 (2011) (requiring only "sexually violent predators" to register for life); N.C. Gen. Stat. § 14-208.40A (2011) (allowing courts to implement satellite-based monitoring if (i) the offender has been classified as a sexually violent predator (ii) the offender is a recidivist, (iii)

the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of N.C. Gen. Stat. §§ 14-27.2A or 14-27.4A, or (v) the offense involved the physical, mental, or sexual abuse of a minor.).

In contrast, N.C. Gen. Stat. § 14-202.5 applies equally to every registered sex offender in the state, regardless of whether the offender committed any sexual offense involving a minor. For example, registered sex offenders convicted of misdemeanor sexual battery of an adult, pursuant to N.C. Gen. Stat. § 14-27.5A (2011), and those convicted of attempted rape of an adult, pursuant to N.C. Gen. Stat. § 14-27.6 (2011), may not access any commercial social networking Web site. Thus, the application of this statute is neither conditional upon showing that the offender previously used a social networking Web site to target children, nor does it require a showing that the offender is a current threat to minors. Accordingly, the statute is not narrowly tailored because it fails to target those offenders who "pose a factually based risk to children through the use or threatened use of the banned sites or services." *Nebraska*, 898 F. Supp. 2d at 1111. In essence, it burdens more people than necessary to achieve its purported goal.

We note that in *Doe v. Prosecutor* and *Doe v. Nebraska*, the challenged statutes were applicable only to those registered sex offenders whose offenses involved a minor. Nevertheless, the courts concluded that the statutes were not narrowly tailored, in part, because they also banned a broad scope of internet activity. As such, tailoring N.C. Gen. Stat. § 14-202.5 to those offenders who "pose a factually based risk to children" does not cure the statute's fatal flaw. *Nebraska*, 898 F. Supp. 2d at 1111. Its overbroad application to all registered sex offenders is merely one example of how, when judged against the First Amendment, N.C. Gen. Stat. § 14-202.5 is not narrowly tailored, and thus unconstitutional.

## ii. *Substantially Broad Scope*

Defendant asserts that an additional First Amendment concern is the fact that N.C. Gen. Stat. § 14-202.5 arbitrarily prohibits a broad scope of internet activity. We agree.

"Expansively written laws designed to protect children are *not* exempt from the constitutional requirement of clarity under both the First Amendment and the Due Process Clause[.]" *Id.* at 1112. Due process requires that laws give people of ordinary intelligence fair notice of what conduct is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222 (1972).

> The lack of such notice in a law that regulates expression raises special First Amendment concerns because of its

obvious chilling effect on free speech. . . . [G]overnment
may regulate in the area of First Amendment freedoms
only with narrow specificity[.] These principles apply to
laws that regulate expression for the purpose of protect-
ing children.

*Brown v. Entm't Merchs. Ass'n,* 2011 U.S. 4802, 37-38, 180 L. Ed. 2d 708,
725 (2011) (quotations and citations omitted). Vague criminal statutes
are disfavored because they restrict the exercise of First Amendment
freedoms. *Reno v. American Civil Liberties Union,* 521 U.S. 844, 138 L.
Ed. 2d 874 (1997).

Here, the State fails to make a convincing argument as to why the
statute is not unconstitutionally vague. N.C. Gen. Stat. § 14-202.5(b)
defines "social networking Web site[s]" as being 1) "commercial" in that
they "derive[] revenue," 2) "social" because they promote the introduc-
tion of individuals, and 3) facilitative of "networking" by allowing users
to create personal profiles or have mechanisms that allow users to com-
municate with others, "such as message board[s], chat room[s], elec-
tronic mail, or instant messenger." N.C. Gen. Stat. § 14-202.5(b) (2011).
N.C. Gen. Stat. § 14-202.5(c) provides two exceptions: 1) an offender
may access a Web site that provides one discrete service, including
photo-sharing, electronic mail, instant messenger, chat room or message
board, or 2) he may visit a Web site that is primarily intended to facilitate
commercial transactions between members or visitors. N.C. Gen. Stat.
§14-202.5(c)(1-2) (2011).

The construction of N.C. Gen. Stat. § 14-202.5(b) lacks clarity, is
vague, and certainly fails to give people of ordinary intelligence fair
notice of what is prohibited. We assume that persons of ordinary intel-
ligence would likely interpret the statute as prohibiting access to main-
stream social networking sites such as Facebook.com and Myspace.com.
However, the ban is much more expansive. For example, while
Foodnetwork.com contains recipes and restaurant suggestions, it is
also a commercial social networking Web site because it derives rev-
enue from advertising, facilitates the social introduction between two
or more persons, allows users to create user profiles, and has message
boards and photo sharing features. Additionally, the statute could be
interpreted to ban registered sex offenders from accessing sites such
as Google.com and Amazon.com because these sites contain subsidiary
social networking pages: they derive revenue from advertising; their
functions facilitate the social introduction of two or more people; and
they allow users to create personal profiles, e-mail accounts, or post

information on message boards. Thus, registered sex offenders may be prohibited from conducting a "Google" search, purchasing items on Amazon.com, or accessing a plethora of Web sites unrelated to online communication with minors. In its overall application, the statute prohibits a registered sex offender whose conviction is unrelated to sexual activity involving a minor from accessing a multitude of Web sites that, in all likelihood, are not frequented by minors.

Furthermore, while the definition of "commercial social networking Web site" in N.C. Gen. Stat. § 14-202.5(b) is overbroad and vague on its face, N.C. Gen. Stat. § 14-202.5(a) is similarly vague. This portion of the statute makes it unlawful for the offender to "access" a Web site where he "knows" that the site permits minor children to become members. The term "access" is defined as "[t]he act of approaching." *American Heritage Dictionary* 8 (3ed. 1997). Accordingly, the statute is violated by merely pulling up a prohibited Web site, regardless of whether the offender searches the site or immediately leaves it upon recognizing that he is banned from its use. Furthermore, by its plain language, it is assumed that every offender inherently "knows" which Web sites are banned. However, given the vague definition of "commercial social networking Web site" and its broad reach, it is fundamentally impossible to expect an offender, or any other person, to "know" whether he is banned from a particular Web site prior to "accessing" it. Moreover, N.C. Gen. Stat. § 14-202.5 contains no defense to prosecution should a sex offender unintentionally access a banned Web site. Finally, should a registered sex offender have active Facebook, Amazon, or other accounts at the time of his conviction, the plain language of N.C. Gen. Stat. § 14-202.5 makes it unlawful to login to close the accounts. Accordingly, we conclude that N.C. Gen. Stat. § 14-202.5 is unconstitutionally vague on its face and overbroad as applied.

### D. Additional Safeguards

Finally, we note that our General Assembly has enacted laws aimed at protecting children on the internet without abridging First Amendment freedoms: N.C. Gen. Stat. § 14-202.3 (2011) prohibits solicitation of a child by a computer or other electronic device to commit an unlawful sex act; N.C. Gen. Stat. § 14-196.3 (2011) prohibits cyber-stalking; and Article 27A requires registered sex offenders to provide the State with "[a]ny online identifier the person uses or intends to use," N.C. Gen. Stat. § 14-208.7(b)(7) (2011). Accordingly, "[w]ith little difficulty, the state could more precisely target illicit communication, as the statutes above demonstrate." Prosecutor, 705 F.3d at 700.

### III.  Conclusion

In sum, we conclude that N.C. Gen. Stat. § 14-202.5 is not narrowly tailored, is vague, and fails to target the "evil" it is intended to rectify. Instead, it arbitrarily burdens all registered sex offenders by preventing a wide range of communication and expressive activity unrelated to achieving its purported goal. The statute violates the First Amendment's guarantee of free speech, and it is unconstitutional on its face and as applied. Accordingly, we vacate the trial court's judgment.

VACATED.

Judges GEER and DILLON concur.