IN THE SUPREME COURT OF NORTH CAROLINA

No. 242A23

Filed 22 August 2025

NORTH CAROLINA DEPARTMENT OF REVENUE

v.

PHILIP MORRIS USA, INC.

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order and opinion entered on 3 May 2023 by Judge Julianna Theall Earp, Special Superior Court Judge for Complex Business Cases, in Superior Court, Wake County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 26 September 2024.

*Jeff Jackson, Attorney General, by James W. Doggett, Deputy Solicitor General, Ronald D. Williams, Special Deputy Attorney General, and Tania X. Laporte-Reveron, Assistant Attorney General, for petitioner-appellee.*

*Alex C. Dale, Christopher S. Edwards, Kay Miller Hobart, and Dylan Z. Ray for respondent-appellant.*

ALLEN, Justice.

To challenge the constitutionality of a tax statute in our state's courts, a taxpayer must satisfy the conditions set out in N.C.G.S. § 105-241.17. Among other things, the taxpayer must first file a petition for a contested case hearing at the Office of Administrative Hearings (OAH), and the OAH must dismiss the petition "for lack of jurisdiction because the sole issue is the constitutionality of a statute and not the

application of a statute." N.C.G.S. § 105-241.17(2)–(3) (2023).

Everyone agrees that N.C.G.S. § 105-241.17 requires the OAH to dismiss a case in which the taxpayer's sole claim is that a tax statute is unconstitutional on its face. We must decide whether dismissal is also mandatory when the taxpayer alleges not that the statute is unconstitutional in all circumstances but merely that it is unconstitutional as applied to the taxpayer who filed the petition.

As explained below, we hold that the OAH must dismiss such as-applied constitutional challenges. Like other administrative agencies, the OAH has only those powers conferred on it by the General Assembly. The legislature has not plainly invested the OAH with jurisdiction over as-applied constitutional challenges to tax statutes. Moreover, the power to rule on the constitutionality of statutes belongs to the judicial branch, so interpreting the relevant statutory provisions to grant this authority to the OAH would raise serious separation-of-powers issues.

When construing a statute to confer certain powers on an administrative agency could lead to a violation of our state constitution's Separation-of-Powers Clause, and another plausible interpretation of the statute would avoid the problem, this Court will ordinarily adopt the alternative construction. The Business Court did just that in this case, and we therefore affirm its order and opinion ruling that the OAH lacked jurisdiction over the petition filed by Philip Morris USA, Inc.

## I.   Background

This case concerns taxes owed by Philip Morris pursuant to N.C.G.S. § 105-122

(franchise statute). In its current form, the franchise statute imposes an annual franchise tax on corporations "for the privilege of doing business in this State and for the continuance of articles of incorporation or domestication of each corporation in this State." N.C.G.S. § 105-122(a) (2023). Although domiciled in Virginia, Philip Morris does business in North Carolina.

For tax years 2012, 2013, and 2014, Philip Morris calculated its annual franchise tax liability using its capital base. Under that calculation method, a corporation with a larger capital base pays more in annual franchise taxes than one with a smaller capital base.[1]

During tax years 2012 through 2014, subsection (b) of the franchise statute allowed a corporation to reduce its capital base by deducting the amount of any debt owed to it by a parent, subsidiary, or affiliated corporation (debtor corporation) but only "to the extent that the debt ha[d] been included in the tax base of the . . . debtor corporation reporting for taxation under the provisions of" the franchise statute. N.C.G.S. § 105-122(b) (2013). Put differently, the "to the extent" clause in subsection (b) prevented a creditor corporation from deducting a debtor corporation's debt from the creditor corporation's capital base unless the debtor corporation was also subject to North Carolina's franchise tax.

In 2016, the North Carolina Department of Revenue audited Philip Morris's

---

[1] Specifically, the rate of the franchise tax is "one dollar and fifty cents ($1.50) per one thousand dollars ($1,000) of the total amount of capital stock, surplus and undivided profits as provided in" section 105-122. N.C.G.S. § 105-122(d) (2013).

franchise tax liability for tax years 2012 through 2014. The audit found that Philip Morris owed additional franchise taxes for each of those years because it had impermissibly deducted from its capital base amounts owed by debtor corporations that did not have to pay North Carolina's franchise tax.

Philip Morris objected to the proposed assessment and requested further review from the Department. The review resulted in a final determination by the Department that Philip Morris owed $344,994 in unpaid franchise taxes, penalties, and interest for tax years 2012 through 2014.

Philip Morris petitioned the OAH for a contested case hearing. Thereafter, it filed a motion for summary judgment based on the dormant Commerce Clause doctrine. According to that doctrine, the Commerce Clause in Article I, Section 8 of the United States Constitution implicitly "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1153 (2023) (cleaned up). *See generally* U.S. Const., art. I, § 8, cl. 3 (authorizing Congress "[t]o regulate Commerce . . . among the several States"). Philip Morris maintained that by conditioning its ability to deduct amounts owed by debtor corporations on whether those corporations did business in North Carolina, the Department had enforced subsection (b) of the franchise statute in a manner that violated the dormant Commerce Clause.

The Department responded by arguing that the petition should be dismissed

because the OAH lacked subject matter jurisdiction over Philip Morris's constitutional claim. In support of its position, the Department cited N.C.G.S. § 105-241.17. *See* N.C.G.S. § 105-241.17 (2023) ("Civil action challenging statute as unconstitutional."). Section 105-241.17 authorizes a "taxpayer who claims that a tax statute is unconstitutional" to "bring a civil action in the Superior Court of Wake County," provided certain conditions are met.[2] *Id.* One such condition is that the OAH has "dismissed the contested case petition for lack of jurisdiction because the sole issue is the constitutionality of a statute and not the application of a statute." *Id.* § 105-241.17(3).

The administrative law judge (ALJ) assigned to the case issued the OAH's "final decision" rejecting the Department's jurisdictional argument and granting Philip Morris's summary judgment motion. In determining that the OAH had jurisdiction over the case, the ALJ observed that Philip Morris sought "only a ruling that [subsection (b) of the franchise statute was] unconstitutional as applied to [Philip Morris], not [a ruling] that [subsection (b) was] unconstitutional on its face." The ALJ opined that the distinction in N.C.G.S. § 105-241.17(3) "between facial and as-applied challenges suggests that [the OAH] must hear and decide cases involving claims alleging [the Department's] unlawful application of a statute to [Philip Morris]." She

---

[2] When read in conjunction with N.C.G.S. § 7A-45.4(b), N.C.G.S. § 105-241.17 contemplates that civil actions filed under its provisions will be heard by superior court judges assigned to the Business Court.

further remarked that the Department had raised no objection to the OAH's jurisdiction over as-applied constitutional challenges.

Turning to the merits of the summary judgment motion, the ALJ ruled that subsection (b) of the franchise statute violated the dormant Commerce Clause by (1) treating Philip Morris differently "based solely on the interstate element of its business" and (2) burdening Philip Morris by denying it "deductions to reduce its tax liability which [were] allowed [for] all corporations not doing interstate affiliate lending." Accordingly, the ALJ reversed and rescinded the Department's final determination to the degree that it conflicted with the ALJ's decision.

The Department petitioned for judicial review of the ALJ's order. Pursuant to N.C.G.S. § 7A-45.4(b), our Chief Justice assigned the case to the Business Court.

The Business Court ruled that the OAH lacked subject matter jurisdiction over Philip Morris's challenge to subsection (b) of the franchise statute. As construed by the court, N.C.G.S. § 105-241.17 "does not authorize [the] OAH to examine whether a tax statute is unconstitutional on its face or as applied to a particular taxpayer when determining whether [the] OAH has jurisdiction."

The Business Court justified its interpretation of N.C.G.S. § 105-241.17 on multiple grounds. It first noted that this Court has said that a statute's constitutionality must be determined by the judiciary, not an administrative board. The Business Court further reasoned that, "[a]s the title and content of the statute make[ ] plain, the overarching purpose of [N.C.G.S. §] 105-241.17 is to venue

constitutional challenges to tax statutes in the courts and leave to [the] OAH a review of matters involving the technical misapplication of those statutes." Thus, according to the Business Court, the phrase "application of a statute" in N.C.G.S. § 105-241.17(3) simply "reflects an effort to distinguish [mere] misapplication challenges from constitutional ones—not facial constitutional challenges from those that are as applied."

The court located additional support for its interpretation in N.C.G.S. § 7A-45.4(b)(1). In the Business Court's view, "if [the] OAH had jurisdiction to decide as-applied constitutional challenges, the legislature would have excluded 'as-applied' challenges from its mandate in [N.C.G.S. § 7A-45.4(b)(1)] that the Business Court decide all constitutional challenges to tax statutes."

The Business Court also highlighted a practical consideration: "The distinction between facial and as-applied constitutional challenges is not always clear." Consequently, "basing a forum's jurisdiction on that distinction would create fundamental uncertainty" over which forum—the OAH or the Business Court— should hear what constitutional challenges to tax statutes.

Furthermore, the court reasoned, even if N.C.G.S. § 105-241.17 permits the OAH to hear as-applied constitutional challenges, Philip Morris's challenge to subsection (b) of the franchise statute was really a facial constitutional challenge, not an as-applied one. From the Business Court's perspective, this fact was "evident in the remedy the ALJ ordered. She did not find that [subsection (b)] was misapplied

and order that it be applied differently; instead, she ordered that the Department not apply the final clause of [subsection (b)] to Philip Morris at all."

Given its reading of N.C.G.S. § 105-241.17, the Business Court reversed the ALJ's final decision and remanded the matter to the OAH with instructions to dismiss the case for lack of subject matter jurisdiction. Philip Morris appealed the Business Court's order directly to this Court under N.C.G.S. § 7A-27(a)(2).

## II.    Standard of Review

The primary issue before this Court is whether the Business Court correctly ruled that the OAH lacks subject matter jurisdiction under N.C.G.S. § 105-241.17 over as-applied constitutional challenges to tax statutes. "We review a lower court's interpretation of statutes de novo." *Morris v. Rodeberg*, 385 N.C. 405, 409 (2023) (emphasis omitted). "When reviewing a matter de novo, this Court considers the matter anew and freely substitutes its own judgment for that of the lower courts." *Town of Midland v. Harrell*, 385 N.C. 365, 370 (2023) (cleaned up).

## III.    Analysis

As a preliminary matter, Philip Morris asserts that the Business Court erred by even considering the Department's argument that the OAH lacks subject matter jurisdiction over as-applied constitutional challenges to tax statutes. As noted above, the Department did not dispute the OAH's jurisdiction over such challenges when this case was pending before the ALJ.

Philip Morris points out that, in reviewing the OAH's final decision, the

Business Court functioned as an appellate court. Citing precedents from this Court, Philip Morris insists that an appellate court may not consider issues that were not presented to the trial court. *E.g.*, *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309 (2001) ("[I]ssues and theories of a case not raised below will not be considered on appeal."); *Weil v. Herring*, 207 N.C. 6, 10 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court.").

Although Philip Morris has correctly articulated the general rule, a major exception unquestionably applies here. As we have frequently explained, "[a] court's lack of subject matter jurisdiction is not waivable and can be raised at any time, *including for the first time upon appeal*." *In re N.P.*, 376 N.C. 729, 731 (2021) (cleaned up) (emphasis added). Consequently, the Business Court did not err in taking up the Department's jurisdictional argument.[3]

---

[3] Philip Morris makes several more arguments in its effort to convince us that the Business Court should not have considered the Department's contention that the OAH lacks jurisdiction over as-applied challenges to tax statutes. The relevant law is so clear that we will respond to but one of them. Philip Morris cites *Grissom v. North Carolina Department of Revenue*, 34 N.C. App. 381 (1977), for the proposition that a party may not change its jurisdictional theory on appeal.

The *Grissom* case is not controlling here. In the first place, it is a decision of the Court of Appeals and thus not binding on this Court. Additionally, the procedural posture of *Grissom* differs materially from that of this case. In *Grissom*, the trial court dismissed the petition and so never reached the merits of the petitioner's claims. In this case, however, the ALJ determined that the OAH possessed jurisdiction over the petition and then proceeded to enter summary judgment in favor of Philip Morris.

We allow the issue of a trial court's subject matter jurisdiction to be raised at any time because a court without such jurisdiction "has no power to act and any resulting judgment is void." *In re N.P.*, 376 N.C. 729, 731 (2021). Obviously, the issue of void judgments arises when trial courts purport to exercise jurisdiction, not when—as in *Grissom*—they decline to do so.

Of course, whether the Business Court reached the right outcome is another question. To answer it, we must determine whether the court correctly interpreted N.C.G.S. § 105-241.17.

When construing a statute, a court's "principal goal . . . is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664 (2001). The court "must begin with an examination of the relevant statutory language." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547 (2018). "If the statute's plain language is clear and unambiguous," the court "applies the statute as written and does not engage in further statutory construction." *N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, 385 N.C. 705, 711 (2024). Accordingly, we commence our review of the Business Court's decision by examining the text of N.C.G.S. § 105-241.17:

> *A taxpayer who claims that a tax statute is unconstitutional may bring a civil action in the Superior Court of Wake County to determine the taxpayer's liability under that statute if all of the conditions in this section are met.* In filing an action under this section, a taxpayer must follow the procedures for a mandatory business case set forth in [N.C.]G.S. [§] 7A-45.4(b) through (f). The conditions for filing a civil action are:
>
> > (1) The taxpayer exhausted the prehearing remedy by receiving a final determination after a review and a conference.
> >
> > (2) The taxpayer commenced a contested case at the [OAH].

Put differently, *Grissom* is inapposite because there no one argued that the trial court acted outside its jurisdiction. In this case, that is precisely the Department's assertion regarding the OAH.

> (3) *The [OAH] dismissed the contested case petition for lack of jurisdiction because the sole issue is the constitutionality of a statute and not the application of a statute.*
>
> (4) The taxpayer has paid the amount of tax, penalties, and interest the final determination states is due.
>
> (5) The civil action is filed within two years of the dismissal.

N.C.G.S. § 105-241.17 (emphases added).

According to Philip Morris, both the first sentence in N.C.G.S. § 105-241.17 and subsection (3) of N.C.G.S. § 105-241.17 reveal that the statute addresses facial—not as-applied—constitutional challenges to tax statutes. Philip Morris interprets the first sentence in N.C.G.S. § 105-241.17 to say

> that [N.C.G.S. § 105-241.17] deals with a taxpayer claiming "that a tax statute *is* unconstitutional." [N.C.G.S.] § 105-241.17 (emphasis added).
>
> Claiming that a statute "*is* unconstitutional" amounts to a facial challenge. Arguing that a statute "*is* unconstitutional" means that the statute, in and of itself, violates constitutional principles. . . .
>
> . . . Based on this first sentence alone, the plain language of [N.C.G.S.] § 105-241.17 shows how a taxpayer must bring facial challenges only . . . .

Elsewhere in its briefing to this Court, Philip Morris insists that an as-applied challenge "does not ask" whether a statute is constitutional.

Philip Morris is off base. Under this Court's precedents, both facial and as-applied challenges are mechanisms for disputing the constitutionality of legislation.

In *Responsible Citizens in Opposition to Flood Plain Ordinance v. City of Asheville*, for example, the plaintiffs alleged that a municipal flood plain ordinance violated their constitutional right to just compensation for property taken for public use. 308 N.C. 255, 256–57 (1983). According to this Court, "it [was] not clear whether [the] plaintiffs [were] attacking the validity of [the challenged flood plain] ordinance as being unconstitutional on its face or as applied to [them]." *Id.* at 263 n.3. Faced with this uncertainty, we opted to "deal with the issue as being the constitutionality of the ordinance as applied to [the] plaintiffs." *Id.* In other words, we saw the lawsuit as an attack on the ordinance's constitutionality, even though we were unsure whether the plaintiffs intended to pursue a facial challenge or an as-applied one.

The discussion of facial and as-applied challenges in *Responsible Citizens* accords with other statements in which this Court has acknowledged that parties may attack the constitutionality of statutes through facial challenges, as-applied challenges, or both.[4] *See, e.g.*, *In re K.C.*, 386 N.C. 690, 696 (2024) (recognizing the existence of "rare cases in which, *as applied to a particular parent*, the Juvenile Code *is unconstitutional*" (emphases added)); *State v. Packingham*, 368 N.C. 380, 383

---

[4] Courts in many other jurisdictions have likewise recognized that both facial and as-applied challenges attack the constitutionality of statutes. *See*, *e.g.*, *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011) ("An appellant may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both."); *United States v. Chase*, Crim. No. RDB-23-0296, 2025 WL 918175, at *2 (March 26, 2025) ("Where a defendant challenges the constitutionality of a statute underlying the charges in an indictment, he may raise a facial or as-applied challenge."); *State v. Anderson*, 2022 ND 144, ¶ 7, 977 N.W.2d 736, 738 (2022) ("Challenges to the constitutionality of a statute may be 'facial' challenges or 'as-applied' challenges.").

(2015) (examining defendant's claim "that N.C.G.S. § 14-202.5 *is unconstitutional both on its face and as applied to him*" (emphasis added)), *rev'd on other grounds*, 582 U.S. 98 (2017); *State v. Williams*, 343 N.C. 345, 374 (1996) (rejecting defendant's argument that "the North Carolina capital sentencing scheme, *on its face or as applied, [is] unconstitutional*" (emphasis added)); *State v. Fortney*, 301 N.C. 31, 34 (1980) ("Defendant asserts [that N.C.G.S. § 8-58.6] *is unconstitutional both on its face and in its application to him*." (emphasis added)).

Contrary to Philip Morris's understanding, the primary difference between a facial challenge and an as-applied challenge is not that one attacks the constitutionality of a statute and the other does not. The chief distinction is found in the differing degrees to which the two kinds of challenges can call a statute's constitutionality into question. Whereas a facial challenge alleges that a statute can never be applied constitutionally, an as-applied challenge makes a significantly more modest claim. *Packingham*, 368 N.C. at 383. It merely asserts that a statute cannot be constitutionally applied to the party disputing its validity, "even if the statute is otherwise generally enforceable." *Id.*

Section 1-267.1 of the General Statutes also influences our interpretation of the first sentence in N.C.G.S. § 105-241.17. Under N.C.G.S. § 1-267.1, "[a]ny action *that is a facial challenge* to the validity of an act of the General Assembly shall be" heard by a three-judge panel of the Superior Court of Wake County. Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(a), 2023 N.C. Sess.

Laws 760, 1168–69 (emphasis added) (amending N.C.G.S. § 1-267.1(a) (2023)). The legislature's express use of the term "facial challenge" in N.C.G.S. § 1-267.1 but not in N.C.G.S. § 105-241.17 suggests that lawmakers did not intend to restrict N.C.G.S. § 105-241.17 to facial challenges.

Philip Morris next argues that "even if th[e] first sentence [of N.C.G.S. § 105-241.17 is] not dispositive, [N.C.G.S.] § 105-241.17(3)'s plain language confirms that [the] OAH may consider as-applied challenges." As construed by Philip Morris, N.C.G.S. § 105-241.17(3)

> provides the classic dichotomy between the well-recognized types of constitutional challenges: facial and as-applied. Where the sole issue is a facial challenge . . . , [the] OAH must dismiss the taxpayer's petition for lack of jurisdiction, and the taxpayer has then satisfied its administrative requirements. . . . Subsection (3) of [N.C.G.S.] § 105-241.17 is abundantly clear that this statute does not preclude [the] OAH['s] consideration of as-applied constitutional challenges, which are to be considered in the normal course of taxpayer challenges before [the] OAH.

In arguing that N.C.G.S. § 105-241.17 "does not preclude" the OAH from considering as-applied constitutional challenges, Philip Morris exposes a critical flaw in its approach. The company seems to assume that the OAH has jurisdiction over constitutional challenges to tax statutes except to the extent that N.C.G.S. § 105-241.17 denies such jurisdiction. This assumption ignores foundational principles of administrative law.

An administrative agency "is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary

implication from the legislative grant of authority." *In re Broad and Gales Creek Cmty. Ass'n*, 300 N.C. 267, 280 (1980). It follows that, to be lawful, each agency action must ultimately be grounded in some piece of legislation.

As its name indicates, the OAH is an administrative agency. *See* N.C.G.S. § 7A-750 (2023) ("There is created an Office of Administrative Hearings . . . an independent, quasi-judicial agency under Article III, Sec. 11 of the Constitution . . . ."). Consequently, the OAH has no jurisdiction over constitutional challenges to tax statutes except insofar as the legislature has positively conferred such jurisdiction.

Philip Morris would have us infer the OAH's jurisdiction over as-applied constitutional challenges from the text of N.C.G.S. § 105-241.17(3):

> If the legislature intended for [N.C.G.S.] § 105-241.17's OAH-dismissal-and-refiling-in-Superior-Court framework to refer to *all* constitutional challenges (facial and as-applied), it would not have needed to include the language "and not the application of a statute" in subsection (3) at all. It would have . . . simply directed [the] OAH to dismiss the contested case petition when any type of constitutional challenge is brought. The phrase "and not the application of a statute" has a logical meaning only if it refers to an as-applied challenge, as distinguished from a facial challenge.

We do not believe that Philip Morris's construction of N.C.G.S. § 105-241.17(3) represents the only plausible interpretation. One could reasonably read the phrase "and not the application of a statute" in N.C.G.S. § 105-241.17(3) to refer to allegations that an administrative agency has applied tax statutes in ways inconsistent with statutory requirements. If this alternative reading is correct, the

General Assembly could have included the phrase simply to clarify that N.C.G.S. § 105-241.17 does not impair the OAH's authority to determine whether administrative agencies have complied with the statutes that govern their operations.

The most that can be said for Philip Morris's position is that N.C.G.S. § 105-241.17 does not *expressly* deprive the OAH of jurisdiction over as-applied constitutional challenges. Yet even if we concede that N.C.G.S. § 105-241.17 is unclear on this point, several factors weigh heavily against adopting Philip Morris's interpretation.

For one thing, N.C.G.S. § 105-241.17 is not the only statute that concerns the proper forum for constitutional challenges to tax statutes. Indeed, N.C.G.S. § 105-241.17 and N.C.G.S. § 7A-45.4 cross-reference each other. *See generally Carver v. Carver*, 310 N.C. 669, 674 (1984) ("It is . . . a fundamental canon of statutory construction that statutes . . . which relate or are applicable to the same matter or subject . . . must be construed together in order to ascertain legislative intent.").

Section 7A-45.4 lists the various categories of cases that may or must be designated as complex business cases and heard by superior court judges assigned to the Business Court. One such category encompasses any "civil action [filed] under [N.C.G.S. §] 105-241.17 containing a constitutional challenge to a tax statute." N.C.G.S. § 7A-45.4(b)(1) (2023). Such civil actions must be designated as complex business cases by the plaintiffs or petitioners. *Id.*

Although it expressly addresses constitutional challenges filed pursuant to N.C.G.S. § 105-241.17, the text of N.C.G.S. § 7A-45.4(b)(1) nowhere distinguishes between facial and as-applied challenges. The General Assembly's use of the generic term "constitutional challenge" in N.C.G.S. § 7A-45.4(b)(1) may be regarded as further evidence that the legislature expected superior court judges, not ALJs, to hear both facial and as-applied constitutional challenges to tax statutes.

This Court's perennial respect for separation of powers also induces us to reject the interpretation of N.C.G.S. § 105-241.17 urged by Philip Morris. From the outset, "separation of powers [has been] one of the fundamental principles on which state government is constructed." John V. Orth & Paul Martin Newby, *The North Carolina State Constitution* 50 (2d ed. 2013). In language nearly identical to that found in North Carolina's 1776 and 1868 constitutions, our current state constitution declares that "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6; *cf.* N.C. Const. of 1776, Declaration of Rights, § IV ("[T]he legislative, executive, and supreme judicial powers of government, ought to be forever separate and distinct from each other."); N.C. Const. of 1868, art. I, § 8 ("The legislative, executive, and supreme judicial powers of the government ought to be forever separate and distinct from each other.").

The Separation-of-Powers Clause has been part of the Declaration of Rights in each of our state's three constitutions. *See generally Harper v. Hall*, 384 N.C. 292,

321 (2023) ("The Declaration of Rights is an expressive yet non-exhaustive list of protections afforded to citizens against government intrusion, along with the ideological premises that underlie the structure of government." (cleaned up)). In placing it there, the framers appear to have been sending a message. Specifically, "[t]he placement of the separation-of-powers clause in the Declaration of Rights suggests that keeping each branch within its described spheres protects the people by limiting overall governmental power." *Id.*

This Court has not always found it easy to determine whether a separation-of-powers violation has occurred. Under our precedents, "[a] violation of separation of powers only occurs when one branch of government exercises, or prevents the exercise of, a power reserved for another branch of government." *Id.* at 322.

While not every turf war between the branches raises genuine separation-of-powers issues, Philip Morris's reading of N.C.G.S. § 105-241.17 would transform the statute into a measure that tests—or even crosses—constitutional boundaries. Our state constitution allows the General Assembly to "vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created." N.C. Const. art. IV, § 3. On the other hand, numerous decisions by this Court indicate that the power to declare statutes unconstitutional is not one of the judicial powers that the legislature may confer on administrative agencies.

In *Gulf Oil Corporation v. Clayton*, for instance, we rejected the Commissioner

of Revenue's contention that the Tax Review Board had jurisdiction over the plaintiff corporation's constitutional challenge to a tax assessment.[5] 267 N.C. 15, 19 (1966). The corporation had filed suit in superior court under a statute that required a taxpayer who wished to challenge the lawfulness—not just the amount—of an assessment "to pay the amount of the disputed tax and sue the State for its recovery." *Id.* at 20. We deemed the statutory procedure "appropriate" because "[t]he law does not contemplate that administrative boards shall pass upon constitutional questions." *Id.*; *see also In re Redmond*, 369 N.C. 490, 493 (2017) ("[The Industrial Commission's] judicial power clearly does not extend to consideration of constitutional questions, as it is a well-settled rule that a statute's constitutionality shall be determined by the judiciary, not an administrative board." (cleaned up)); *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 670 (1998) ("[O]ur well-settled rule [is] that a statute's constitutionality shall be determined by the judiciary, not an administrative board."); *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173 (1961) ("Does a quasi-judicial board of the executive branch of government have jurisdiction to pass upon the constitutionality of a statute? Administrative boards have only such authority as is *properly* conferred upon them by the Legislature. The question of constitutionality of a statute is for the judicial branch." (emphasis added)).

---

[5] The General Assembly abolished the Tax Review Board in 2007. *See N.C. Dep't of Revenue v. Bill Davis Racing*, 201 N.C. App. 35, 39 n.5 (2009) ("Effective 1 January 2008, the General Assembly substantially modified the procedures by which taxpayers were entitled to obtain review of adverse Department decisions by repealing the statutes that created and made reference to the Tax Review Board . . . .").

To confer even a limited power of judicial review on administrative agencies would be to grant them a share of the most formidable power the courts possess. In our constitutional theory, laws enacted by the General Assembly amount to "expressions of the people's will." *Cmty. Success Initiative v. Moore*, 384 N.C. 194, 211 (2023). Thus, in striking down a law, a court can find itself at odds with the very citizens from whom its authority ultimately flows. *See* N.C. Const. art. I, § 2 ("[A]ll government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole."). For this reason, a court may not invalidate a state law unless the law "violates federal law or the supreme expression of the people's will, the North Carolina Constitution." *Cmty. Success Initiative*, 384 N.C. at 211. Judges prioritize the constitution over statutes in the belief that the people speak definitively through its provisions.

If we construe N.C.G.S. § 105-241.17 as Philip Morris urges, we will be confronted with a statute that potentially infringes upon the power of the judicial branch by granting an administrative agency the power of judicial review, albeit in a limited form. But that is not all. Philip Morris's interpretation implies that the General Assembly wished to diminish its own power relative to the executive branch. As interpreted by Philip Morris, N.C.G.S. § 105-241.17 authorizes an executive branch agency—the OAH—to decide whether certain kinds of legislative enactments are constitutional with respect to individual complainants, a determination of the sort previously reserved exclusively for the courts.

As explained above, however, the relevant provisions of N.C.G.S. § 105-241.17 are ambiguous. Moreover, they can be reasonably construed to avoid the separation-of-powers problems that Philip Morris would have us create. If we read N.C.G.S. § 105-241.17 to deny the OAH jurisdiction over both facial and as-applied constitutional challenges, then the statute presents none of the separation-of-powers issues just described.

We choose not to assume that the General Assembly intended a meaning that would put N.C.G.S. § 105-241.17 at risk of contravening the Separation-of-Powers Clause. In our view, if the legislature had wished to bestow the judicial power to decide as-applied constitutional challenges upon the OAH, it would have done so in clear-cut terms.

Our approach resembles the major questions doctrine formulated by the United States Supreme Court. "In basic terms, the major questions doctrine tells us that when an administrative agency in the executive branch wants to do something that is an extraordinarily big deal, it must show that Congress clearly gave it permission to do so in the statutory text." *United States v. Freeman*, No. 23-1839, 2025 WL 2115998, at *8 (1st Cir. July 29, 2025). The Supreme Court has typically invoked the doctrine in cases "in which the 'history and the breadth of the authority that [the agency] has asserted,' and the 'economic and political significance' of that assertion, provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022) (alteration

in original) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). In such cases, "something more than a merely plausible textual basis for the agency action is necessary" for the agency to prevail. *Id.* at 2609.

Similarly, as demonstrated here, this Court will not lightly infer that the General Assembly means to grant administrative agencies extraordinary powers that could violate the Separation-of-Powers Clause. *See Doe 1K v. Roman Cath. Diocese*, 387 N.C. 12, 17 (2025) ("[O]ur state's separation of powers principles are, if anything, stronger than those in the federal constitution."). If the legislature intends to confer such powers, then it must do so in language that will not sustain another plausible interpretation.

Philip Morris argues that this Court "tacitly approved" the OAH's "long-standing practice and policy of resolving as-applied challenges" in *Quad Graphics, Inc. v. N.C. Department of Revenue*, 383 N.C. 356 (2022), and *North Carolina Department of Revenue v. Graybar Electric Company*, 373 N.C. 382 (2020) (per curiam). Suffice to say, in neither case did any party or this Court raise the issue of whether N.C.G.S. § 105-241.17 grants the OAH jurisdiction over as-applied constitutional challenges. Accordingly, those cases do nothing to bolster Philip Morris's position.

Finally, because we hold that N.C.G.S. § 105-241.17 does not invest the OAH with jurisdiction over as-applied constitutional challenges to tax statutes, we need not decide whether the Business Court correctly determined that Philip Morris's

petition is really a facial challenge, not an as-applied one. Either way, the OAH lacked jurisdiction over the matter.

## IV.    Conclusion

Section 105-241.17 does not grant the OAH subject matter jurisdiction over as-applied constitutional challenges to tax statutes. The OAH therefore lacked jurisdiction over the petition filed by Philip Morris. The judgment of the Business Court reversing the OAH's final decision and remanding this case for dismissal is hereby affirmed.

AFFIRMED.